# The UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PRECISION CONTRACTING SOLUTIONS, LP, *et al.*, | |
| Plaintiffs, | Civil Action No. 19-2748 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| ANGI HOMESERVICES, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

The plaintiffs, a home improvement company and its sole owner, and a contractor and client of the company, initiated this suit alleging that the company's business profiles and associated ratings and reviews were unlawfully removed from the websites of two of the four defendants. *See* Defs. ANGI Homeservices, Inc. and Angie's List, Inc's Mot. to Dismiss Pls.' Compl. ("Corporate Defs.' Mot."), ECF No. 13; Def. Vogel's Mots. to Dismiss ("Vogel's Mots."), ECF Nos. 14, 15, 16;[1] Def. District of Columbia's Mot. to Dismiss ("D.C.'s Mot."), ECF No. 17. For the reasons stated, all the defendants' motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) are granted, and the complaint is dismissed.

**I.  BACKGROUND**

Briefly reviewed below are the parties, factual allegations and claims asserted in this lawsuit, as well as relevant procedural background.

---

[1] Defendant Kenneth Vogel, who is an attorney practicing in the District of Columbia and proceeding here *pro se*, filed multiple motions to dismiss directed at particular plaintiffs. *See* Def. Vogel's Mot. to Dismiss Pl. Carolyn Torsell's Compl., ECF No. 14; Def. Vogel's Mot. to Dismiss Pl. PCS and Derrick Sieber's Compl., ECF No. 15; Def. Vogel's Mot. to Dismiss Pl. Stephen Sieber's Compl., ECF No. 16.

### A. The Parties

Plaintiff Precision Contracting Solutions, LP ("PCS") is a home improvement contractor currently licensed in the District of Columbia ("the District"). *See* Notice of Removal, Ex. 1, Compl. ¶ 1, ECF No. 1-1. PCS's sole proprietor is plaintiff Derrick Sieber, *id.* ¶ 2, and plaintiff Stephen Sieber is "a design consultant to PCS, with no ownership interest or administrative control over PCS," *id.* ¶ 3. The fourth plaintiff, Carolyn Torsell, is a District homeowner who hired PCS to perform "construction services on her home." *Id.* ¶ 60.

Defendants HomeAdvisor and Angie's List are web-based services that match consumers with service providers like PCS. *See id.* ¶¶ 5–6; *see also* www.homeadvisor.com; www.angieslist.com.[2] Kenneth Vogel, another defendant, previously served as an attorney for a former PCS client during litigation between that client and PCS in the Superior Court of the District. *See* Compl. ¶¶ 8, 121. The District is the fourth defendant. *See id.* ¶ 9.

### B. Facts Alleged in the Complaint

#### 1. *PCS's Relationships with HomeAdvisor and Angie's List*

PCS allegedly "had an ongoing business relationship" with HomeAdvisor. *Id.* ¶ 14. Between 2013 and 2019, PCS "paid Home Advisor over $300,000 for leads, many of which led to consumer contracts for PCS with District consumers." *Id.* ¶ 15. Before entering this business relationship and "post[ing] a profile of [PCS] services, personnel, videos and photos of recent projects . . . on the Home Advisor website," *id.* ¶ 16, PCS "agree[d] to terms and conditions specified by Home Advisor," *id.* ¶ 17. These terms and conditions authorized HomeAdvisor to "remove or modify Content [on the HomeAdvisor website] for any reason." *Id.* ¶ 31 (quoting

---

[2] HomeAdvisor is identified in the complaint as ANGI Homeservices, Inc. d/b/a HomeAdvisor, Compl. ¶ 5, but "ANGI Homeservices, Inc. is the parent company of HomeAdvisor, Inc., which does business as HomeAdvisor." Defs.' ANGI Homeservices Inc. and Angie's List, Inc.'s Mem. Supp. Mot. to Dismiss Pls.' Compl. ("Corporate Defs.' Mem."), ECF No. 13-1. In this opinion, defendant ANGI Homeservices is referred to as HomeAdvisor.

HomeAdvisor Service Provider Terms and Conditions, https://pro.homeadvisor.com/terms/terms-conditions/).

"Angie's List on its own initiative, created a PCS profile on its website and published . . . 'A' ratings and reviews from dozens of District consumers about PCS." *Id.* ¶ 44. This profile, the complaint alleges, "created a fundamental source of leads, business development and [a] reputation barometer for PCS during the period 2013 thr[ough] 2019." *Id.* ¶ 47; *see also id.* ¶ 45 (stating that the profile "created a highly visible reputation barometer for PCS."). Service providers are "permitted to use" Angie's List only "subject to the terms and conditions contained" in Angie's List's Service Provider's User Agreement.[3] That agreement also allows Angie's List to "remove [Service Provider] Content at any time in Angie's List[']s sole discretion." Compl. ¶ 42; *see also* Angie's List Service Provider's User Agreement.

## 2. The District's Suit Against PCS and the Siebers

On July 31, 2019, the District's Office of the Attorney General ("OAG") filed suit against PCS and Derrick and Stephen Sieber for ongoing violations of the District's Consumer Protection Procedures Act, D.C. Code § 23-3901, *et seq.*, and the District's Construction Code, D.C. Code § 6-1401, *et seq. See* Complaint, *District of Columbia v. Precision Contracting Solutions, L.P., et al.*, No. 2019 CA 005047 B (D.C. Super. Ct. filed July 31, 2019).[4] The suit alleges that PCS and the Siebers have made misleading statements to consumers, have performed illegal and substandard home improvement work, and have harassed and threatened consumers who complain about PCS business practices. For example:

---

[3] The Angie's List Service Provider's User Agreement may be found at https://vault.pactsafe.io/s/a84ad12b-7245-4a12-9fc5-2011a3bf4d62/legal.html#contract-hkgqxfs6e, and may be relied in assessing the motion to dismiss because it was "incorporated in the complaint," *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006), through plaintiffs' heavy reliance, *see* Compl. ¶¶ 32–43; 85–94; *see also, e.g., Phillips v. Fulwood*, 616 F.3d 577, 582 n.3 (D.C. Cir. 2010) (considering a document incorporated in the complaint and relied on by the plaintiff).

[4] Judicial notice may be taken of "facts in the public record," such as this OAG complaint, in evaluating a motion to dismiss. *See Covad Commc'ns Co. v. Bell Atl Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

- "Defendants contracted with a consumer to remodel a basement. Defendants informed the consumer that no underpinning was required for the project as Defendants had a novel method to structurally reinforce the basement. Defendants continued the basement renovation without underpinning until water began seeping into the consumer's basement. When the consumer contacted [the District's Department of Consumer and Regulatory Affairs ("DCRA")], DCRA's inspection resulted in the issuance of a stop work order. The inspection revealed that Defendants had improperly cut the footers of the property around the perimeter of the basement and had attempted to use concrete on the walls to hide the infiltration of water. To remediate this dangerous condition, the basement had to be completely dug out, fully underpinned and re-poured, at significant cost to the consumer." *Id.* ¶ 10.

- "Defendants also enter into contracts with consumers with language indicating that the price will not exceed a certain amount. After consumers make payments to Defendants as required by the contract, Defendants refuse to finish the promised scope of work and demand additional sums to be paid or threaten to abandon the project altogether. In 2017, PCS entered into a contract with a homeowner for a full renovation of their property. Two years later, and after the full sums requested by PCS had been paid, the consumer was left with an unfinished property and PCS continued to demand sums far in excess of the initial contract to complete the project." *Id.* ¶ 17.

- "Defendants also mislead consumers regarding the identity and training of Defendant S. Sieber. Defendant S. Sieber's legal name is Stephen Charles Sieber, Derrick Sieber's father. He is introduced to consumers as 'Stevie Marco,' PCS's designer, even though Defendant S. Sieber is not a licensed interior designer in the District. Defendant S. Sieber . . . is able to negotiate the terms of agreements between PCS and customers, even though he is not licensed by DCRA as a home improvement specialist, in violation of D.C. Code §§ 47-2851.02; 47-2844; and 16 DCMR §§ 800–899." *Id.* ¶ 20 (internal citation omitted).

### 3. *Removal of PCS's Profile from the HomeAdvisor and Angie's List Websites*

Shortly after the District filed its suit, "[o]n August 6, 2019, Home Advisor and Angie's List . . . removed the PCS profile from their websites along with 54 . . . consumer ratings and reviews of PCS that had been posted by District consumers." Compl. ¶ 49. The next day, Derrick Sieber "sent an e-mail[] to" HomeAdvisor asking "why the PCS profile and ratings and reviews about PCS had been removed," *id.* ¶ 56, and stating that "if such content were not

reinstated, PCS and others would file a lawsuit, seek injunctive relief and damages resulting from various causes of action," *id.* ¶ 57.[5] Sieber did not receive a response. *Id.* ¶ 58.

Later in August, plaintiff Carolyn Torsell, a District homeowner, "sought to post a rating and review about her experiences with PCS," *id.* ¶ 61, but when she went to HomeAdvisor's and Angie's List's "websites to post her very positive rating and review of PCS, she could not do so because she found no profile or other information about PCS on those websites," *id.* ¶ 62.

### C. Procedural Background and the Plaintiffs' Complaint

Plaintiffs filed suit in the District's Superior Court in September 2019, and HomeAdvisor and Angie's List removed the case to federal court. *See* Notice of Removal at 2, ECF No. 1.[6] The complaint seeks $25,000,000 in compensatory damages to PCS from Angie's List and HomeAdvisor, an award of $10,000,000 in compensatory damages to Stephen Sieber from all defendants on the false light claim, additional damages under the Federal Trade Commission Act, unspecified punitive damages, attorneys' fees, and injunctive relief for the removal of PCS from the HomeAdvisor and Angie's List websites. *See* Compl. at 22–23.[7]

---

[5] The complaint alleges that Sieber "sent an e-mails [sic]" to both "Corporate Defendants." Compl. ¶ 56. Attached to the complaint as Exhibit 2, however, is a single email from Derrick Sieber to HomeAdvisor. *See* Email from Derrick Sieber to HomeAdvisor (Aug. 7, 2019), Compl., Ex. 2, ECF 1-2.

[6] This Court has subject matter jurisdiction under 28 U.S.C. §§ 1441, 1331, and 1367. As will be explained, Count One of the complaint alleges violations of a federal law, the Consumer Review Fairness Act, 15 U.S.C. § 45b, which is part of the Federal Trade Commission Act. Subject matter jurisdiction over Count One is thus available under 28 U.S.C § 1331. Counts Two, Three and Four incorporate by reference the allegations in Count One, *see* Compl. ¶¶ 98, 108, 118, 136 (incorporating by reference the allegations in Count One), and all four counts depend on the same key facts about removal of the PCS profiles from HomeAdvisor's and Angie's List's websites. The state law claims asserted in Counts Two through Four thus "'derive from a common nucleus of operative fact' and thus form part of the same Article III case or controversy" as the federal law claim, *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) (quoting *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir.1995)), making supplemental jurisdiction over Counts Two, Three, and Four proper, *see* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *see also, e.g., City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (concluding that supplemental jurisdiction is proper where the claims arise out of the same event).

[7] Plaintiffs have withdrawn their request for punitive damages against the District, *see* Pls.' Opp'n to Mot. to Dismiss of Def. the District of Columbia ("Pls.' D.C. Opp'n") at 9–10, ECF No. 22, referring to case law barring such recovery, *see, e.g., Smith v. D.C.*, 336 A.2d 831, 832 (D.C. 1975) (per curiam) ("[A]s a general rule there can be no recovery of punitive damages against a municipality absent a statute expressly authorizing it.").

More specifically, PCS first alleges that HomeAdvisor's and Angie's List's terms of use and their removal of the PCS profile information, including consumer ratings and reviews, violated 15 U.S.C. § 45b, the Consumer Review Fairness Act ("CRFA"), part of the Federal Trade Commission Act ("FTCA"). *Id.* ¶¶ 65–97. PCS also alleges that the "intentional[] and unlawful[]" removal of the PCS profiles amounted to tortious interference with existing and prospective business relations of PCS. *Id.* ¶¶ 98–107. All four plaintiffs allege that the removal of PCS from the websites cast the plaintiffs in a false light. *See id.* ¶¶ 108–117. Finally, all plaintiffs claim that the defendants engaged in a conspiracy "to blacken the reputation of PCS in the home improvement market and thereby prevent PCS from entering into future contracts with District consumers." *Id.* ¶ 133.

The defendants filed motions to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[8] These are now ripe for decision.[9]

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability," *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)), but that "allow[] the court to draw the reasonable inference that the defendant is

---

[8] Vogel's motions also seek dismissal under Federal Rule of Civil Procedure 12(b)(5), for insufficient service of process. *See* Vogel's Mots.; *see also* Pls.' Opp'n to the Mots. to Dismiss of Def. Kenneth Vogel ("Pls.' Vogel Opp'n") at 2, ECF No. 23 (offering to re-serve Vogel). A waiver of service signed by Vogel was later filed, mooting Vogel's motion under Rule 12(b)(5). *See* Waiver of the Service of Summons, ECF No. 29-1.

[9] After the case was removed, the Siebers, proceeding *pro se*, filed Motions for a Temporary Restraining Order and for a Preliminary Injunction against HomeAdvisor and Angie's List, *see* Mot. of Pls. Derrick Sieber and Stephen Sieber for a TRO Against Def. ANGI Homeservices, Inc. and Angie's List, Inc., ECF No. 12; Mot. of Pls. Derrick Sieber and Stephen Sieber for a Prelim. Inj. Order Against Def. ANGI Homeservices, Inc. and Angie's List, Inc., ECF No. 12, which were denied, *see* Min. Order (Sept. 24, 2019).

liable for the misconduct alleged," *id.*; *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Put differently, to survive a 12(b)(6) motion, a complaint must contain facts that "nudge[]" plaintiffs' claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569.

In deciding a motion under 12(b)(6), the court must consider the whole complaint, accepting all well-pleaded factual allegations as true, "even if doubtful in fact," *id*. at 555, and granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true, however, "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also id.* at 681 ("[A]llegations [that] are conclusory . . . [are] not entitled to be assumed true.").

## III. DISCUSSION

The four claims — under the CRFA, for tortious interference, for false light, and for conspiracy — are discussed in turn.

### A. The CRFA

Count One of the complaint, brought by PCS alone, alleges that all four defendants violated the CRFA, which prohibits service providers from entering into form contracts barring consumers from publishing reviews of "the goods, services, or conduct" of the service provider that is party to the form contract. 15 U.S.C. § 45b(b). The CRFA, however, does not create a private right of action. Instead, the CRFA provides for enforcement only by the Federal Trade Commission ("FTC") and the states. *See id.* § 45b(d) ("Enforcement by Commission"); *id.* § 45b(e) ("Enforcement by States"); *see also Quiqley v. Yelp, Inc.*, No. 17-cv-3771-RS, 2018 WL7204066, at *3 (N.D. Cal. Jan. 22, 2018) ("The CRFA is . . . by its terms enforced only by

the Federal Trade Commission or state attorneys general."); *cf. Seibert v. Precision Contracting Solutions, LP*, No. CV 18-818 (RMC), 2019 WL 935637, at *8 (D.D.C. Feb. 26, 2019) (recognizing, in evaluating a claim under the Federal Arbitration Act ("FAA"), that "[w]hile § 45b is subject to enforcement by the Federal Trade Commission or the States, no private right of action is suggested").[10]

Plaintiffs contend that a private right of action under the CRFA can be inferred, *see* Pls.' Corporate Defs. Opp'n at 5; Pls.' D.C. Opp'n at 3–4, but the text and structure of the Act "reveal[] no congressional intent to create" one, *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001). Most telling is that § 45b empowers the FTC and the states alone, as "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 290; *see also Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1098 (D.C. Cir. 2017) (declining to recognize an implied cause of action where the provision "specifically addresses who may sue."). Further, FTC enforcement of the CRFA runs parallel to FTC enforcement of the FTCA, *see* 15 U.S.C. § 45b(d)(2)(A) (granting the FTC the same powers in enforcing the CRFA as in enforcing the FTCA); *id.* § 45b(d)(2)(B) ("Any person who violates this section shall be subject to the penalties and entitled to the privileges and immunities provided in the [FTCA]."), suggesting that the FTCA is a useful guide here, and "[i]t is long-established that the FTC[A] does not provide a private cause of action," *Hardaway v. Syneron, Inc.*, 928 F. Supp. 2d 217, 218 (D.D.C. 2013); *see also, e.g.*, *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 987 (D.C. Cir. 1973) ("[P]rivate actions to vindicate rights asserted under the

---

[10] Plaintiffs grossly mischaracterize *Seibert*, which did not, as the plaintiffs assert, "f[i]nd that a private right of enforcement existed." Pls.' Opp'n to Mot. to Dismiss of Defs. ANGI Homeservices, Inc. and Angie's List ("Pls.' Corporate Defs. Opp'n") at 8, ECF No. 21. In *Seibert*, a former customer of PCS sought to stay an arbitration with PCS under the FAA. 2019 WL 935637, at *1. In agreeing with the customer that the broad "confidentiality mandate in the PCS arbitration clause violate[d] public policy as expressed in § 45b" to allow "consumer reviews related to the provision of goods and services when the consumer agrees to a form contract," *id.* at *7, *Seibert* voided the arbitration agreement but acknowledged that "no private right of action is suggested" by § 45b, *id.* at *8.

8

[FTCA] may not be maintained."); *In re SuperValu, Inc.*, 925 F.3d 955, 963 (8th Cir. 2019) ("The FTCA creates no private right of action.").[11]

Finally, even if the CRFA did establish a private right of action, PCS's claim would fail as a matter of law. As explained, the CRFA bars form contracts that impede reviews of "the goods, services, or conduct of" the service provider that is party to the form contract. 15 U.S.C. § 45b(a)(2). The statute defines "covered communication[s]" as reviews of a "person by an individual who is party to a form contract *with respect to which such person is also a party*." *Id.* (emphasis added). PCS alleges that it entered into form contracts with HomeAdvisor and Angie's List but does not allege that HomeAdvisor and Angie's List used those form contracts to limit PCS's ability to review HomeAdvisor or Angie's List. *See* Compl. ¶¶ 65–97.[12] Trying to get around this logical gap in its argument, PCS contends that the CRFA prohibits HomeAdvisor and Angie's List from removing customer reviews of providers like PCS because that action "just as effectively 'prohibits or restricts' the dissemination of that information to the public . . . as does a restriction on such dissemination that is found in a service provider's form contract."

---

[11] Plaintiffs urge that a private right of action may be implied based on the four-factor test from *Cort v. Ash*, 422 U.S. 66, 78 (1975). *See* Pls.' Corporate Defs. Opp'n at 6; *see also Tax Analysts v. IRS*, 214 F.3d 179, 185–86 (D.C. Cir. 2000) (stating the factors as "(1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate for the court to infer a cause of action based solely on federal law"). The Supreme Court and the D.C. Circuit, however, have stepped away from *Cort*'s multi-factor approach toward a focus on statutory intent alone. *See, e.g.*, *Johnson*, 849 F.3d at 1097 ("To support an implied cause of action, the relevant statute must demonstrate Congress's intent—notwithstanding the lack of an express cause of action—to create a 'private right' and a 'private remedy.'" (quoting *Sandoval*, 532 U.S. at 286)); *see also Bouknight v. D.C.*, 109 F. Supp. 3d 244, 251 (D.D.C. 2015) (recognizing "more recent decisions, including *Alexander v. Sandoval*, 532 U.S. 275 (2001) where the Supreme Court has made clear that congressional intent is the sole touchstone for purposes of implying causes of action not made express by Congress"); *Sledge v. D.C.*, 869 F. Supp. 2d 140, 144 (D.D.C. 2012) (similar). Analysis of the *Cort* factors other than legislative intent would be improper, or at least unnecessary, here. *See, e.g.*, *Johnson*, 849 F.3d at 1098 (stopping after an analysis of statutory intent).

[12] Although Count One is brought by PCS against all four defendants, plaintiffs now concede that they do not assert that the District or Vogel is directly liable under Count One, *see* Pls.' D.C. Opp'n at 4; Pls.' Vogel Opp'n at 2; *see also infra* Parts III.B.2.a, and indeed, there is no conceivable theory on which the District or Vogel, who are not even alleged to have had form contracts with plaintiffs, could have violated the CRFA.

9

Pls.' Corporate Defs. Opp'n at 12–13 (quoting 15 U.S.C. § 45b(b)(1)(A)). This contention, however, cannot be squared with the text of the CRFA just quoted. The legislative history confirms that the Act "doesn't interfere with the Web site operators' ability to manage the contacts and reviews on their own Web sites[,]" as "[r]easonable management of online reviews is necessary to ensure that they convey useful information as opposed to irrelevant or offensive content." 162 Cong. Rec. H5295-01 (Sept. 12, 2016) (statement of Rep. Burgess).

PCS's CRFA claims are dismissed with prejudice.

### B. Tortious Interference with a Contract or Business Relationship

PCS's claims of tortious interference with existing and prospective business relationships are also dismissed.

#### 1. *Legal Standard*

To survive the motions to dismiss these claims, PCS must plead "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Bennett Enters. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995)) (applying D.C. law); *see also, e.g.*, *Whitt v. Am. Prop. Constr.*, P.C., 157 A.3d 196, 202 (D.C. 2017). Even if these elements are pled, however, a claim for tortious interference fails if the defendant shows "that his or her conduct was justified or privileged." *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads*, 565 A.2d 285, 290 (D.C. 1989) (citing *Restatement (Second) of Torts* §§ 766–767 (1979)). In determining whether a defendant's conduct was improper, *see id.* ("The Restatement's reference to 'improper' conduct is simply another way of saying that the alleged tortfeasor's conduct must be legally justified."), the D.C. Court of Appeals has considered multiple factors, including "the nature of the actor's conduct,"

"the actor's motive," "the interests sought to be advanced by the actor," and "the proximity or remoteness of the actor's conduct to the interference," *id.* (quoting *Restatement (Second) of Torts* § 767); *see also Armstrong v. Thompson*, 80 A.3d 177, 191 (D.C. 2013).[13] "[T]he 'motive' behind [any] interference is the key consideration." *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 346 (D.C. 2015) (citing *Sorrells*, 565 A.2d at 290).

### 2. *The Complaint Fails to State a Claim for Tortious Interference*

#### a. *The District and Vogel*

Count Two of the complaint, which pleads the claims of tortious interference, is devoid of allegations about the District or Vogel and, consequently, fails to state a claim against these two defendants. *See* Compl. ¶¶ 98–107. Plaintiffs now concede that these defendants are not directly liable for tortious interference or for false light, which is discussed next. *See* Pls.' Vogel Opp'n at 2 (stating that plaintiffs "have brought all counts against all Defendants . . . to underscore the vicarious liability of the District and Kenneth Vogel for such actions based on their conspiracy with the Corporate Defendants."); *see also* Pls.' D.C. Opp'n at 4 ("Plaintiffs, however, are not asserting liability against the District or Ken Vogel for any act or omission of their own in this matter."); Pls.' Vogel Opp'n at 2 ("None of the Plaintiffs in this proceeding is claiming that Mr. Vogel is personally liable to them for any acts or omissions he personally has brought about in connection with the counts they have pled in the Complaint."). The tortious interference claims against the District and Vogel are dismissed.

---

[13]     Multiple factors must be weighed in part because "[u]nlike other intentional torts such as intentional injury to person or property, or defamation, this branch of tort law has not developed a crystallized set of definite rules as to the existence or non-existence of a privilege to act . . . ." *Restatement (Second) of Torts* § 767 cmt. b.

11

### b. *HomeAdvisor and Angie's List*

To start, PCS's theory of liability — that HomeAdvisor's and Angie's List's removal of a profile PCS used to drum up business amounts to tortious interference — is a novel one in the District. In other jurisdictions, analogous tortious interference claims have typically been dismissed because any interference was incidental and not intentional, or because the defendant's conduct was justified. *See, e.g., Robin v. Bellsouth Advert. & Pub. Co.*, 471 S.E.2d 294, 296–97 (Ga. Ct. App. 1996) (rejecting lawyer's claim that yellow pages company tortiously interfered with prospective client relationships by failing to include lawyer in an advertising feature); *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 245–46 (Mo. Ct. App. 2011) (dismissing tortious interference claim against Better Business Bureau ("BBB") for publishing low ratings because BBB's actions were legally justified); *Audition Div., Ltd. v. Better Bus. Bureau of Metro. Chi., Inc.*, 458 N.E.2d 115, 120 (Ill. App. Ct. 1983) (rejecting at summary judgment tortious interference claim against BBB for negative reports because of insufficient evidence that reports were motivated by an intent to interfere). *But see Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cty., Inc.*, 637 P.2d 733, 740 (Ariz. 1981) (concluding that disputes of fact material to whether defendant BBB's statements were defamatory and made for the purpose of interfering with business relationships precluded summary judgment).

For example, *Robin v. Bellsouth Advertising & Publishing Co.* dismissed a lawyer's claim of tortious interference against a yellow pages company that had allegedly denied the lawyer access to a particular advertising feature. 471 S.E.2d at 295. *Robin* observed that "[e]ven if the" feature at issue "may have been more effective in attracting clients" than other modes of promotion, the allegation that the defendant had prevented the plaintiff from accessing that feature did not "support the claim that [defendant] directly induced any clients to patronize

12

attorneys other than [plaintiff]." *Id.* at 296. Further, the company's actions were not "malicious" or improper, *id.*, but were "privileged," in part because the "directory is a private publication which may accept or reject advertising as it chooses." *Id.* at 297.

Here, too, the allegations that HomeAdvisor and Angie's List removed PCS's profile do not establish a "desire[] to bring [interference] about." *Id.* at 296 (quoting *Restatement (Second) of Torts*, § 766B cmt. d). The complaint does allege that "[t]he Corporate Defendants knew that District consumers who had posted glowing ratings and comments about PCS were likely to retain PCS in the future," Compl. ¶ 102, and that "[t]he Corporate Defendants knew of [other] prospective relationships because they knew that PCS was a prominent Service Provider in the District who responded well to leads generated by the Corporate Defendants," *id.* ¶ 104. Yet, such mere assertions that the relevant defendants had knowledge of PCS's prior positive reviews and previous customer leads fall short of well-pled facts showing intent to breach PCS's business relationships with prior, ongoing, or even future clients.

Even taking these allegations as enough, however, to plead knowledge that "interference [would be] certain or substantially certain to occur as a result of" removing the profiles, *Restatement (Second) of Torts* § 766B, cmt d, PCS fails to state a claim for tortious interference because HomeAdvisor's and Angie's List's actions were justified, *see Sorrells*, 565 A.2d at 290 (defining "improper" based on *Restatement (Second) of Torts* § 767).

Plaintiffs counter that the removal was improper because it was "unlawful[]" under the CRFA, *see* Compl. ¶ 106, but, as already explained, the CRFA does not even regulate websites like HomeAdvisor and Angie's List in managing content posted by consumers about service providers like PCS. Further, although "claims of legal justification are 'vitiated' if malice is proved," *Havilah Real Prop. Servs., LLC*, 108 A.3d at 346 (quoting *Sorrells*, 565 A.2d at 290),

13

the complaint's assertions of malice are conclusory, *see* Compl. ¶ 119 (alleging that "Defendant[] Angie's List . . . had a history of arrogant and illegal actions toward PCS"), and must be disregarded, *see Audition Div., Ltd.*, 458 N.E.2d at 120 ("Plaintiff's conclusory allegations that defendants were carrying out a 'personal vendetta' to destroy plaintiff are insufficient as a matter of law."); *Castle Rock Remodeling, LLC*, 354 S.W.3d at 246 (same).

The complaint's only well-pled allegations about the sites' motives link the removal of the profiles to the filing of the District's lawsuit. *See* Compl. ¶ 130–31; *see also* Defs. ANGI Homeservices and Angie's List, Inc.'s Mem. Supp. Mot. to Dismiss Pls.' Compl. ("Corporate Defs.' Mem.") at 4, ECF No. 13-1 (corroborating that HomeAdvisor and Angie's List "removed PCS from their websites" "[s]hortly after learning about the Attorney General's complaint"). The sole reasonable inference from the complaint, then, is that any interference with existing or prospective business relations was "a mere incidental result of conduct . . . engag[ed] in for another purpose." *Restatement (Second) of Torts* § 766B, cmt d.

Removal of PCS's profiles due to the District's complaint was well-justified, and thus any interference was "not improper." *Id.* ("If he had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found to be not improper."); *Mitchell Mach., Inc. v. Ford New Holland, Inc.*, 918 F.2d 1366, 1371 (8th Cir. 1990) (rejecting tortious interference claim when any interference was "an incidental result" of proper conduct). As HomeAdvisor and Angie's List argue, their conduct was privileged and justified first because the terms of use that PCS accepted granted Angie's List and HomeAdvisor total discretion to remove content from their websites, *see* Compl. ¶¶ 31, 42, and, second, because web marketplaces have a legitimate interest in controlling the businesses "feature[d] or include[d]" on their sites,

14

Corporate Defs.' Mem. at 10 ("[P]ublic policy dictates that HomeAdvisor and Angie's List cannot be forced to feature or include PCS on their websites despite the outrageous violations identified by the Attorney General for the District of Columbia); *see also Robin*, 471 S.E.2d at 297 ( "[The] directory is a private publication which may accept or reject advertising as it chooses."); *cf. Audition Div., Ltd.*, 458 N.E.2d at 120 (deeming BBB's reports to consumers conditionally privileged advice because such reports are published "in conformance with BBB's public service goals" (citing *Restatement (Second) of Torts* § 772)).

This claim must be dismissed for an additional reason: generic allegations about the existing and prospective business relations affected are insufficient to plead plausibly tortious interference in the District. *See* Defs.' ANGI Homeservices, Inc. and Angie's List, Inc.'s Reply Supp. Mot. to Dismiss Pls.' Compl. ("Corporate Defs.' Reply") at 10, ECF No. 24 (developing this argument). Courts applying District law have regarded allegations of interference with "unspecified relationships," *Williams v. Fed. Nat. Mortg. Ass'n*, No. CIV 05-1483 (JDB), 2006 WL 1774252, at *8 (D.D.C. June 26, 2006), or with "hypothetical categories of business relationships" as inadequate to plead the existence of a business relationship or expectancy, *MiMedx Grp., Inc. v. DBW Partners LLC*, No. CV 17-1925 (JDB), 2018 WL 4681005, at *8 (D.D.C. Sept. 28, 2018); *see also Sharpe v. Am. Acad. of Actuaries*, 285 F. Supp. 3d 285, 292 (D.D.C. 2018) (requiring the plaintiff to "plead the specific contracts or expectancies that the Plaintiff claims were interfered with"); *Samuel v. Wells Fargo & Co.,* No. CV 17-2539 (CKK), 2018 WL 4705807, at *3 (D.D.C. Oct. 1, 2018) ("Plaintiff failed to plead the existence of a valid business relationship or expectancy, which requires the probability of a specific future contractual or economic relationship."). PCS's allegations of interference with relationships with "District consumers" are similarly conclusory and insufficient. *See* Compl. ¶ 99 ("At the

15

time that the PCS profile, ratings, and reviews were unlawfully removed from Defendants['] Websites, PCS had existing and valid business relationships with many District customers who had given glowing ratings and reviews about PCS on Defendants Websites."); *id.* ¶ 103 ("PCS also had prospective business relationships with other consumers through its continuing use of Defendants['] Websites based on the glowing reviews posted by District consumers").

In sum, the complaint fails to state a claim of tortious interference against any defendant, requiring dismissal of Count Two.

### C. False Light

Count Three, brought by all four plaintiffs against all four defendants, alleges that "removal by the Corporate Defendants of the PCS profile, ratings and reviews . . . gave the public a negative inference that PCS was not qualified to be on those websites for reasons that were so bad that they could not be explained to the public," Compl. ¶ 112, that "[s]uch an impression . . . was false insofar as PCS had done nothing to merit the removal of its profile, ratings and reviews from Defendants['] websites," *id.* ¶ 114, and that "removal of the PCS profiles, ratings and reviews from these websites therefore cast . . . in a false light," *id.* ¶ 115, PCS and "those associated with PCS who were mentioned in the ratings and reviews by District consumers such as Plaintiffs Derrick Sieber and Stephen Sieber," *id.* ¶ 116. Count Three fails to state a claim against any defendant.

To begin, Count Three is devoid of allegations about the District and Vogel, *see* Compl. ¶¶ 108–13, and, as already noted, plaintiffs now concede that those defendants are not directly liable for false light, *see* Pls.' D.C. Opp'n at 4; Pls.' Vogel Opp'n at 2. The false light claims against the District and Vogel are dismissed.

Next, plaintiff Torsell cannot maintain a false light claim against HomeAdvisor or Angie's List. To survive the motion to dismiss these claims, Torsell would have to plead:

(1) publicity; (2) about a false statement, representation, or imputation; (3) understood to be of and concerning her; and (4) which places her in a false light that would be offensive to a reasonable person. *See Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1267 (D.C. 2015). Removal of the PCS profiles, however, does not concern Torsell, a former customer who had yet to post a rating or review on either HomeAdvisor or Angie's List. *See, e.g.*, *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859–60 (D.C. 1999) (deeming orchestra's advertising featuring actor posing as an unidentified clarinetist to not be "of and concerning the plaintiff" who was one of four clarinetists in the orchestra). Indeed, the complaint does not attempt to allege otherwise. *See* Compl. ¶¶ 108–13.[14]

Finally, the false light claims by PCS and the Siebers must be dismissed because removal of the profiles did not portray those plaintiffs in a light that was "false." *Doe*, 116 A.3d at 1267; *see also Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 191–92 (D.D.C. 2016) ("'[I]is essential to' a false light claim 'that the matter published concerning the plaintiff is not true.'" (quoting *Restatement (Second) of Torts* § 652E, cmt. a)). As explained, the complaint alleges that "removal . . . of the PCS profile, ratings and reviews . . . gave the public a negative inference that PCS was not qualified to be on those websites," Compl. ¶ 112, but, even assuming as true that the removal resulted in this perception, the perception that HomeAdvisor and Angie's List had deemed PCS unqualified to be on their websites is not wrong, or even misleading, *see* Corporate Defs.' Mem. at 12–13 (stating this). According to the complaint, the "negative inference," Compl. ¶ 112, "was false insofar as PCS had done nothing to merit the removal of its

---

[14] The District also contends that Torsell lacks Article III standing to bring a false light claim against the District, *see* Def. D.C.'s Mem. Supp. Mot. to Dismiss at 8 ("D.C.'s Mem."), ECF No. 17 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)), and HomeAdvisor and Angie's List argue that none of the individual plaintiffs "allege[s] injury to any legal right of their own" that could support standing, Corporate Defs.' Mem. at 14; *see also* Def. Vogel's Mot. to Dismiss Pl. Stephen Sieber's Compl. at 13 (arguing that Stephen Sieber lacks standing to sue Vogel for false light). These arguments need not be resolved because the complaint fails to state any claims by these plaintiffs on grounds other than standing.

profile, ratings and reviews from Defendants websites," *id.* ¶ 114. HomeAdvisor and Angie's List removed the PCS profiles after learning about the suit by the District, however. *See* Compl. ¶ 130–31; Corporate Defs.' Mem. at 4. As already explained, the complaint does not plausibly allege that HomeAdvisor and Angie's List's reaction to the District's complaint was unjustified. Nor have PCS and the Siebers plausibly pled that the District's complaint falsely portrayed them.[15]

### D. Conspiracy

All four plaintiffs bring a conspiracy claim against all four defendants. *See* Compl. ¶¶ 118–35. The complaint fails to state a claim for conspiracy first of all because "[l]iability for civil conspiracy depends on performance of some underlying tortious act," *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013) (quoting *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir.1983)), and no tort claim has been plausibly pled, *see, e.g.*, *Grimes v. Dist. of Columbia, Bus. Decisions Info., Inc.*, 89 A.3d 107, 115 (D.C. 2014) (upholding dismissal of a complaint on this ground). The complaint pleads that defendants conspired to "to blacken the reputation of PCS" and "prevent PCS from entering into future contracts with District consumers," Compl. ¶ 133, but, as already explained, fails to state a claim for either false light or tortious interference.

The other allegedly "tortious acts that were undertaken in tandem to harm PCS and the Siebers" mentioned in plaintiffs' opposition to the District's motion — "breach of contract" and

---

[15] The allegation that the District lacked "any legal basis or authority," Compl. ¶ 133, is both conclusory and contradicted by the complaint's reference to the OAG complaint against PCS, *id.* ¶ 49, and is therefore disregarded. To the extent that the plaintiffs seek to bolster this conclusory allegation with assertions in an opposition brief that "[d]iscovery will . . . show that the OAG complaint contained false and defamatory statements about PCS and the Siebers," Pls.' D.C. Opp'n at 9; *see also id.* at 8, this effort cannot substitute for well-pled facts in the complaint. In any event, the merits of the OAG's suit are irrelevant to the tortious interference and false light claims against HomeAdvisor and Angie's List, as HomeAdvisor's and Angie's List's reliance in good faith on the OAG suit provides enough justification to defeat those tort claims.

18

filing a "fals[e]" claim in Superior Court by Vogel, Pls.' D.C. Opp'n at 6, "false and defamatory statements" by the District in its complaint, *id.* at 7, "forcibl[e] entr[y]" of Stephen Sieber's home by an investigator from OAG, *id.* (citing Compl. ¶ 125) — also cannot form the basis for a civil conspiracy claim. Even setting aside the question of whether these acts are sufficiently pled in the complaint, the complaint does not plausibly allege any agreement to engage in breach of contract, false statements, or forcible entry. *See Saucier*, 64 A.3d at 446 (stating the elements of civil conspiracy as "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme" (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)); *see also Paul*, 754 A.2d at 310 & n.27 (finding no evidence of an agreement and not considering whether an underlying tort was pled).

The complaint's only non-conclusory allegations of coordination are that Vogel told the OAG that PCS had "plant[ed] false reviews on the Home Advisor website in September 2018 and caused the OAG to launch a fraud investigation," Compl. ¶ 124, and that the OAG then "issued a subpoena or otherwise discussed with Home Advisor the production of documents and or information pertaining to the PCS profile, ratings and reviews" *id.* ¶ 126; *see also id.* ¶ 127 (asserting that "[t]he OAG was in continuing communications thereafter with Home Advisor and Angie's List regarding information about PCS").[16] These allegations do not "plausibly suggest[] . . . agreement," *Twombly*, 550 U.S. at 557, to engage in an unlawful or tortious act; they are "just as much," if not more, "in line with," *Twombly*, 550 U.S. at 554, cooperation among the defendants to initiate and conduct a legitimate investigation into potential violations of District

---

[16] Plaintiffs' extended description, in their opposition to the District's motion, of what they believe discovery will uncover simply repeats the complaint's factual allegations, adding nothing that could strengthen an inference that defendants entered into an agreement to engage in unlawful activity. *See* Pls.' D.C. Opp'n at 8–9.

19

law by PCS and the Siebers. "[A]llegations that a defendant acted in ways consistent with a conspiratorial agreement, but also equally well explained by legitimate . . . [motives], do 'not suffice . . . to show illegality.'" *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051–52 (D.C. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556–57). The complaint's allegations of conspiracy are insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are granted. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  November 19, 2019

_____
BERYL A. HOWELL
Chief Judge